## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Joyce Opal,<br><br>          Plaintiff,<br><br>v.<br><br>CaremarkPCS Health, L.L.C.<br><br>          Defendant. | Case No.: 0:21-cv-1594<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

1.  Congress has found that the primary purpose of the Electronic Funds Transfer Act is "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems. The primary objective of this subchapter, however, is the provision of individual consumer rights."

2.  This action arises out of violations of the Electronic Fund Transfer Act ("EFTA") 15 U.S.C. § 1693 *et seq.* and its implementing Regulation E, by Defendant and its agents in their illegal transfers of funds from Plaintiff's bank account.

## JURISDICTION

3.  Jurisdiction of this Court arises under 15 U.S.C. § 1693m and under 28 U.S.C. § 1367 for pendant state law claims.

4.  Venue is proper because the acts and transactions occurred here, Plaintiff resides here, and Defendant transacts business here.

5.  Defendant has transacted business within the State of Minnesota by providing

-1-

pharmacy services to Plaintiff via the mails while Plaintiff was located within and permanently residing within the State of Minnesota.

6.     Defendant has transacted business within the State of Minnesota by operating an online pharmacy, sending and receiving mail within Minnesota, and directing pharmacy-related activities to Minnesota.

## PARTIES

7.     Plaintiff Joyce Opal (hereinafter "Plaintiff") is a natural person who resides in the State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) or a person affected by a violation of that law.

8.     Plaintiff has suffered an injury in fact that is fairly traceable to Defendant's conduct and that is likely to be redressed by a favorable decision in this matter.

9.     Defendant CaremarkPCS Health, L.L.C. (hereinafter "Defendant") is a foreign corporation and online pharmacy service, operating from a principal office address of One CVS Drive, MC 1160, Woonsocket, RI 02895, with a registered agent of process CT Corporation System Inc located at 1010 Dale St N, St Paul, MN 55117–5603, and is an entity covered by 15 U.S.C. § 1693 and under Regulation E, 12 C.F.R 1005.2.

## FACTUAL ALLEGATIONS

10.    Within one year immediately preceding the filing of this complaint, Defendant initiated and/or attempted to initiate certain electronic funds transfers from Plaintiff's bank accounts for pharmaceuticals, which were "electronic funds transfers" as that term is defined by 15 U.S.C. § 1693a(7).

11.  Sometime on or before 2021, Defendant's agents or employees communicated with Plaintiff by telephone and solicited and obtained Plaintiff's personal bank account information in order to initiate a series of electronic fund transfers, which were to pay for Plaintiff's prescriptions, and which such transactions were subject to Regulation E and EFTA.  *See* 12 C.F.R. § 1005.3(b).

12.  Plaintiff is a 62-year old person who from time-to-time ordered prescription medications from Defendant.

13.  Plaintiff sole income comes from Social Security Disability and she is on a tight budget.

14.  Within the past one year before filing this lawsuit, Defendant consistently exceeded its authority by making electronic fund transfers that overcharged Plaintiff's bank account for these prescriptions and in varying amounts that Plaintiff had not authorized.

15.  The CFPB has held that a company violates the EFTA where withdrawal amounts vary from what consumers authorized, if the company fails to provide advance notice of the varying amounts, and a consumer has not opted out of such notice. See *Consent Order*, In re Discover Bank, et al., CFPB No. 2020-CFPB-0026, at 16–17 (Dec. 22, 2020), available at https://files.consumerfinance.gov.

16.  Plaintiff has not opted out of the receipt of any legally required notices under EFTA with respect to Defendant.

### *Unauthorized Electronic Fund Transfer in February 2021*

17.   Sometime on or about February 2021, Plaintiff told Defendant to stop charging her debit card for certain prescriptions unless she first authorized the charge, because she had become growingly concerned with the Defendant's excess charges made on her debit card that had not authorized.

18.   Plaintiff's demand to Defendant that it stop charging her debit card on her personal bank account was a revocation of any prior authorization to Defendant to make electronic funds transfers from Plaintiff's bank account.

19.   In or around February 23, 2021, during a phone conversation with Defendant, Defendant advised Plaintiff that her prescription medicine would cost approximately $250 for a three-month supply, and in response, Plaintiff approved only the $250 amount.

20.   Later, Defendant actually charged Plaintiff's debit card for $406.55 without her prior knowledge or consent, thus Defendant exceeded Plaintiff's prior authorization for an electronic fund transfer by more than $156.

21.   When a preauthorized electronic fund transfer from a consumer's account will vary in amount from the previous transfer, under the same authorization or from the preauthorized amount, the designated payee must send the consumer written notice of the amount and date of the transfer at least ten days before the date the transfer is to take place. 15 U.S.C. § 1693e; Reg. E, 12 C.F.R. § 1005.10(d) [§ 205.10(d)].

22.   Defendant violated the above provisions of Reg E. and EFTA when it failed to provide advanced notice to Plaintiff of the variable amount.

23.    Plaintiff has suffered actual and concrete harm as a result of Defendant's violations
       of Reg E. and EFTA because she has been wrongfully deprived of her funds and
       Defendant's misconduct has caused her personal budget to be thrown into disarray.

### *Unauthorized Electronic Fund Transfer in April 2021*

24.    On April 18, 2021, Defendant again charged Plaintiff on her debit card without her
       authorization and then sent her medications that she did not approve of and had not
       agreed to pay for.

25.    In response, on or about April 23, 2021, Plaintiff called Defendant and spoke with
       its customer service department and talked to a person who identified themselves as
       one of Defendant's managers.

26.    Plaintiff told Defendant's manager that she did not authorize the Defendant's
       electronic fund transfers made to her debit card on that occasion and that she
       disputed those charges.

27.    Defendant's employee told Plaintiff that when Plaintiff's doctor sends a prescription
       to them that that means Plaintiff needs the medicine and that Defendant thereafter
       fills the prescription and sends it out to Plaintiff, regardless of whether or not
       Plaintiff approves of it.

28.    Plaintiff reminded Defendant's employee that she had called Defendant numerous
       times previously and told it to stop making electronic fund transfers out of her bank
       account without her prior approval.

29.    Plaintiff had also previously and repeatedly told Defendant's employees that
       Plaintiff needed to approve the prescription charges in advance because Plaintiff

needed to ensure that there were sufficient funds in her bank account to cover the cost of medicine.

30.    On those previous occasions, Defendant's employees told Plaintiff that they had noted that information on her account and that they would not make any more electronic fund transfers from her bank account again without her advance approval.

31.    During the same conversation with a manager of Defendant, Plaintiff again raised the issue of being overcharged on her debit card on previous prescriptions.

32.    Defendant's manager told Plaintiff that when Defendant quotes a price to Plaintiff for her medicine it is just an estimate and that the actual amount charged could be more.

33.    Plaintiff asked the manager why Defendant could not simply quote a fixed price for medicine, and in response Defendant told Plaintiff that she was going to "educate" her about how Defendant created prices.

34.    Plaintiff also asked to return the unordered medicine that was shipped to her without her approval.

35.    In response, Defendant's employee told Plaintiff that she could send the medicine back, but there was no guarantee that she would receive any refund for it back to her personal bank account from which the original unauthorized electronic fund transfer had been taken.

### *May 6, 2021, Call to Plaintiff's Bank*

36.    On May 6, 2021, Plaintiff called her bank to see if there was a way to stop Defendant from charging her debit card again and taking her money out of her bank account.

37.    Plaintiff's bank, US Bank, told her that she would need to cancel her debit card and get a new one issued to her in order to get the charges to stop.

38.    This would be extremely inconvenient for Plaintiff because she has other automatic payments set up on that debit card number.

### *Violations of the Electronic Fund Transfers Act*

39.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

40.    Defendant failed to obtain written authorization from the Plaintiff for these electronic fund transfers, as required by, and in violation of, Reg. E and EFTA.  *See* 12 C.F.R. § 1005.10(b).

41.    Defendant failed to provide the Plaintiff with a written copy of this authorization for these electronic fund transfers, as required by, and in violation of, Reg. E and EFTA.  *See* 12 C.F.R. § 1005.10(b).

42.    The Electronic Fund Transfer Act ("EFTA") requires that a merchant give a customer notice of and a method for stopping automated recurring electronic fund transfers from a bank account.

43.    Under EFTA, Defendant was required to give Plaintiff a written notice of how Plaintiff could stop automated payments from her bank account.

44.    Defendant failed to provide notice of a method for Plaintiff to stop these automated payments from her bank account for this alleged debt and failed to abide by Plaintiff verbal demands that it stop making electronic fund transfers on her personal bank account.

45.   The failure to provide such notice, and abide by Plaintiff's demands to stop making such unauthorized electronic fund transfers, violated EFTA and its implementing Regulation E.

46.   Defendant made multiple electronic fund transfers from Plaintiff's bank account in the last year immediately preceding the filing of this lawsuit, within the meaning of Regulation E and EFTA, without having first complied with the requirements of those federal laws.  *See* 15 U.S.C. § 1693 and 12 C.F.R. § 1005.10.

47.   Defendant's failure to provide the notices required by the EFTA, prior to instituting multiple electronic fund transfers from Plaintiff's bank account, constitutes a violation of the EFTA, 15 U.S.C. § 1693.

48.   Defendant engaged in numerous unfair acts and practices by withdrawing payments and withdrawing payments in variable amounts from Plaintiff's bank account without a valid authorization, in violation of the Electronic Funds Transfer Act (EFTA), 15 U.S.C. §1693e(a) and (b), and Regulation E, 12 C.F.R. § 1005.10(b) and (d).

### *Summary*

49.   The above-described conduct by Defendant in making its electronic fund transfers from Plaintiff were oppressive, deceptive, misleading, unfair and illegal conduct, all done in violation of numerous and multiple provisions of the Reg. E and EFTA.

50.   These actions taken by Defendant, and the employees employed by Defendant, were made in violation of multiple provisions of the Reg. E and EFTA, including but not limited to all of the provisions of those laws cited herein.

51.   These violations by Defendant were knowing, willful, negligent and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

52.   Defendant's conduct with respect to these unauthorized electronic fund transfers caused Plaintiff to suffer concrete and particularized harm because the Reg. E and EFTA provide Plaintiff with the legally protected right to be treated fairly and truthfully with respect to any electronic fund transfers.

53.   Defendant's deceptive, misleading and unfair representations with respect to its electronic fund transfers were material misrepresentations that affected and frustrated Plaintiff's ability to intelligently respond to Defendant's electronic fund transfers because Plaintiff could not adequately respond to the Defendant's conduct in violation of Reg. E and EFTA.

### *Respondeat Superior Liability*

54.   The acts and omissions herein of the individuals employed by Defendant, and the other individuals employed as agents of Defendant as further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant.

55.   The acts and omissions by these individuals were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant.

56.   By committing these acts and omissions against Plaintiff, these individuals were motivated to benefit their principal, Defendant.

57.    Defendant is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its employees, including but not limited to violations of the Reg. E and EFTA.

## TRIAL BY JURY

58.    Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.

## CAUSES OF ACTION

## COUNT I.

## VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT AND REG. E

## 15 U.S.C § 1693 *et seq*. and 12 C.F.R § 205 *et seq.*

59.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

60.    The foregoing intentional and negligent acts and omissions of Defendant constitutes numerous and multiple violations of EFTA and Regulation E including, but not limited to, each and every one of the above-cited provisions of EFTA, 15 U.S.C. § 1693 *et seq.*

61.    As a result of Defendant's violations of EFTA and Regulation E, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1693m(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1693m(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 169m(a)(3) from Defendant.

## COUNT II.

## CONVERSION

62.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

63.   Under Minnesota law, conversion is defined as an act of willful interference with the personal property of another which is without justification or which is inconsistent with the rights of the person entitled to the use, possession or ownership of the property.   *Reisdorf v. i3, LLC*, D.Minn.2015, 129 F.Supp.3d 751.

64.   The elements of conversion are: "(1) the plaintiff has a property interest; and the defendant deprived the plaintiff of that property interest." *Smith v. Lurie*, Civil No. 09-3513 (D. Minn. May 10, 2011) (*citing Lassen v. First Bank Eden Prairie*, 514 N.W.2d 831, 838 (Minn. Ct. App. 1994)).

65.   Plaintiff held a possessory interest in all of the personal funds in Plaintiff's bank account.

66.   Plaintiff's interest in her personal funds was greater than any interest held by Defendant.

67.   Defendant deprived Plaintiff of the property interest in her account funds by taking these funds without Plaintiff's authorization and thereafter refusing to return them in violation of its obligations under EFTA.

68.   Defendant did not return or offer to return Plaintiff's personal property that it took from her without right, consent or permission, despite lawful demands that had been made by Plaintiff to Defendant.

69.   Defendant's interference with Plaintiff's property rights in her illegally transferred

funds, including but not limited to the $156 taken in February 2021, was a substantial one for which she has suffered serious damages and actual harm.

70. Defendant exercised dominion or control over or seriously interfered with Plaintiff's interest in those funds and such conduct deprived Plaintiff of her interest in those funds.

71. The foregoing acts and omissions of Defendant and its employees and agents constitute a civil conversion of Claimant's personal property.

72. The measure of damages for conversion is "the market value of the property at the time of the conversion, plus interest from that time." *Smith*, Civil No. 09-3513 (*citing Dairy Farm Leasing Co. v. Haas Livestock Selling Agency, Inc*., 458 N.W.2d 417, 419 (Minn. Ct. App. 1990)).

73. As a result of Defendant's multiple conversions, Plaintiff is entitled to damages in an amount based upon the value of the property converted, plus interest from the time of Defendant's conversion.

### COUNT III.

### CIVIL THEFT

74. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

75. Minn. Stat. § 604.14 provides that:

> A person who steals personal property from another is civilly liable to the owner of the property for its value when stolen plus punitive damages of either $50 or up to 100 percent of its value when stolen, whichever is greater.

76. A plaintiff alleging civil theft under Minnesota statute may seek recovery of the stolen property, and "punitive" damages of up to 100% of the value of the property at the time it was stolen, without the need to seek permission from the court to amend their complaint to seek punitive damages. *OnePoint Solutions, LLC v. Borchert,* 486 F.3d 342, 349 (8th Cir. 2007).

77. Defendant improperly took Plaintiff's funds without her permission or prior authorization because it repeatedly overcharged her for her prescription medicines and made unauthorized electronic fund transfers from her personal bank account and then converted these funds for its own use and benefit.

78. Defendant did not return or offer to return Plaintiff's personal property that it took without right, consent or permission, despite repeated lawful demands that had been made by Plaintiff.

79. The foregoing acts and omissions of Defendant and their agents constitute a civil theft with respect to Plaintiff.

80. As a result of Defendant's civil theft, Plaintiff is entitled to damages in an amount based upon the value of the funds taken from Plaintiff, plus interest, from Defendant herein, pursuant to Minn. Stat. § 604.14.

## COUNT IV.

## VIOLATIONS OF THE PREVENTION OF CONSUMER FRAUD ACT –

## MINN. STAT. §§ 325F.68 TO 325F.70

81. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

82.    The prescription medicine ordered by Plaintiff from Defendant was "merchandise" within the meaning of Minn. Stat. § 325F.68 *et seq.*

83.    At all relevant times, Minnesota had statutes in effect prohibiting false, fraudulent, misleading, and deceptive practices in connection with the sale of any merchandise. Minn. Stat. § 325F.68 *et seq.*

84.    Minnesota. Statute § 8.31 allows consumers like Plaintiff to pursue claims for violation of Minn. Stat. § 325F.68 *et seq.*

85.    The Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68 *et seq.* serves as protection against fraudulent, misleading and deceptive trade practices in connection with the sale of any merchandise, as described within, and provides, in pertinent part:

> **Minn.Stat. §325F.69 Subdivision 1.** Fraud, misrepresentation, deceptive practices. The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided herein.

86.    Defendant engaged in numerous fraudulent, misleading and deceptive trade practices with its sale of sale of prescription medicines to Plaintiff, including but not limited to inducing her to purchase this medicine at one price and then later charge a much higher prior,  and sending her medicine and charging her for it when she had not ordered it, without Plaintiff's prior approvals.

87.    Defendant's actions, statements and/or omissions constitute fraudulent, misleading and deceptive practices under Minn. Stat. §325F.69 *et seq.*

88.   The fraudulent, misleading and deceptive practices were committed by Defendant in connection with its sale of merchandise to Plaintiff.

89.   Defendant's unlawful actions were willful and intentional violations of Plaintiff's rights.

90.   Plaintiff justifiably relied on Defendant's obligation not to engage in such fraudulent, misleading and deceptive practices to Plaintiff's detriment.

91.   Defendant's above-described conduct had the tendency to deceive Plaintiff and Defendant's actions caused significant injury and loss to Plaintiff.

92.   By reason of the foregoing, Defendant violated laws prohibiting fraudulent, misleading and deceptive trade practices, including, but not limited to, Minn. Stat. §325F.69 *et seq.*

93.   Upon good faith information and belief, Defendant has participated in similar illegal and unlawful transactions with other consumers, victimizing these other consumers.

94.   Plaintiff's pursuit of this action will benefit the public as Plaintiff seeks to enjoin Defendant from engaging in any further fraudulent, misleading and deceptive trade practices preventing further injury and harm to unwitting consumers.

95.   Plaintiff has suffered a deprivation of property rights and is entitled to the full value of loss of use of her funds due to Defendant's unlawful practices.

96.   As a result of Defendant's unlawful conduct, Plaintiff seeks an award of damages in an amount to be determined at trial, costs and disbursements, including costs of investigation, and reasonable attorney's fees.

97.  Plaintiff further seeks any other equitable or injunctive relief the court may deem just and proper pursuant to the provisions of Minn. Stat. § 8.31, subd. 3 to prevent Defendant from committing similar unlawful acts in the future victimizing other consumers.

## COUNT V.

## SUPPLEMENTAL CIVIL PENALTY FOR SENIOR CITIZENS FOR

## VICTIMS OF CONSUMER FRAUD –

## MINN. STAT. §325F.71

98.  Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

99.  Minnesota law states in pertinent part:

> **Subd. 2. Supplemental civil penalty.** (a) **In addition to any liability for a civil penalty pursuant to** sections 325D.43 to 325D.48, regarding deceptive trade practices; 325F.67, regarding false advertising; and **325F.68 to 325F.70, regarding consumer fraud**; a person who engages in any conduct prohibited by those statutes, and whose conduct is perpetrated against one or more senior citizens or disabled persons, is liable for an **additional civil penalty not to exceed $10,000 for each violation**, if one or more of the factors in paragraph (b) are present.
> (b) In determining whether to impose a civil penalty pursuant to paragraph (a), and the amount of the penalty, the court shall consider, in addition to other appropriate factors, the extent to which one or more of the following factors are present:
> (1) **whether the defendant knew or should have known that the defendant's conduct was directed to one or more senior citizens or disabled persons;**
> (2) whether the defendant's conduct caused senior citizens or disabled persons to suffer: loss or encumbrance of a primary residence, principal employment, or source of income; substantial loss of property set aside for retirement or for personal or family care and maintenance; substantial loss of payments received under a pension or retirement plan or a

government benefits program; or assets essential to the health or welfare of the senior citizen or disabled person;

(3) **whether one or more senior citizens or disabled persons are more vulnerable to the defendant's conduct than other members of the public because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and actually suffered physical, emotional, or economic damage resulting from the defendant's conduct**; or

(4) whether the defendant's conduct caused senior citizens or disabled persons to make an uncompensated asset transfer that resulted in the person being found ineligible for medical assistance.

Minn. Stat. Ann. § 325F.71 (bold underlined emphasis added).

100.   Plaintiff was 62-years old at the time she was unlawfully charged for this prescription medicine from Defendant and was therefore a "Senior citizen" as defined by Minn. Stat. §325F.71, subd. 1(a) ("Senior citizen" means a person who is 62 years of age or older.)

101.   Upon good faith information and belief, Defendant was aware of Plaintiff's age and status as a senior citizen, as it had gathered her date of birth information at the time of her engagement with it for her prescription medicine.

102.   Defendant's violation of Minn. Stat. §325F.69 *et seq*. with respect to Plaintiff's Contract therefore entitles Plaintiff to a civil penalty under Minn. Stat. §325F.71 in the amount of $10,000 for each violation by Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant:

- for an award of actual damages pursuant to 15 U.S.C. § 1693m(a)(1) against Defendant and for Plaintiff;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1693m(a)(2)(A) against Defendant and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692m(a)(3) against Defendant and for Plaintiff;

- for an award of actual damages, compensatory damages, expectancy damages, in an amount based upon the value of the property converted, plus interest from the time of Defendant's conversion, with interest on such amount as allowed by law until paid for Defendant's conversion;

- for an award of damages in an amount based upon the value of the funds taken from Plaintiff, plus interest, from Defendant herein, pursuant to Minn. Stat. § 604.14, with interest on such amount as allowed by law until paid for Defendant's civil theft;

- for an award of actual damages, compensatory damages, expectancy damages, costs and attorney's fees against Defendant, with interest on such amount as allowed by law until paid, including costs of investigation, for Defendant's violation of Minn. Stat. §325F.69 *et seq*. and pursuant to Minn. Stat. §8.31;

- for an award of $10,000 civil penalty damages as allowed by Minnesota law, costs and attorney's fees against Defendant, with interest on such amount as allowed by law until paid, including costs of investigation, for Defendant's violation of Minn. Stat. §325F.71 *et seq*. and pursuant to Minn. Stat. §8.31;

- for an award of any other equitable or injunctive relief the court may deem just and proper pursuant to the provisions of Minn. Stat. § 8.31, subd. 3 to prevent Defendant from committing similar unlawful acts in the future which would victimize other consumers.

- for an award of Plaintiff reasonable attorney's fees and costs against Defendant pursuant to Minn. Stat. § 8.31, subd. 3a;

- and for such other and further relief as may be just and proper.

Respectfully submitted,

**THE BARRY LAW OFFICE, LTD**

Dated: June 30, 2021

By:  s/ Peter F. Barry
Peter F. Barry, Esq.
Attorney I.D.#0266577
2828 University Ave. SE, Suite 202
Minneapolis, Minnesota 55414-4127
Telephone:  (612) 379-8800
pbarry@lawpoint.com

*Attorney for Plaintiff*

## **VERIFICATION OF COMPLAINT AND CERTIFICATION**

STATE OF MINNESOTA          )
                            ) ss
COUNTY OF HENNEPIN          )

Pursuant to 28 U.S.C. § 1746, Plaintiff Joyce Opal verifies, certifies, and declares as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Jun 30, 2021

Executed on _____          *JOYCE B OPAL*
                                      JOYCE B OPAL (Jun 30, 2021 13:00 CDT)
                                      Signature

**NOTICE TO PRESERVE ALL DOCUMENTS, RECORDINGS, AND TANGIBLE THINGS, AND ALL ELECTRONICALLY STORED INFORMATION ("Notice")**

To the Defendant(s) Above:

**As you know, this law firm has been retained to represent the Plaintiff in the above captioned matter ("Lawsuit").** As used in this notice, the terms "you" and "your" refer to the Defendant(s) above-named and their predecessors, successors, parents, subsidiaries, divisions and affiliates and its respective officers, directors, agents, attorneys, accounts, employees, partners, contractors and other persons occupying similar positions or performing any functions on behalf of Defendant.

**My client respectfully demands that you preserve all recordings, documents, tangible things and electronically stored information that are in anyway relevant to the Lawsuit.** A civil suit has been commenced against you by my client in the District Court herein, related to the matters described herein.

**You have a legal duty to preserve evidence in this matter.** This duty to preserve evidence exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. The Minnesota Supreme Court has specifically addressed this issue:

> We have said that the spoliation of evidence is the "failure to preserve property for another's use as evidence in pending or future litigation." *Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc.,* 456 N.W.2d 434, 436 (Minn.1990) (quoting *County of Solano v. Delancy,* 264 Cal.Rptr. 721, 724 n. 4 (Cal.Ct.App.1989)). Further, we have recognized that, regardless of whether a party acted in good or bad faith, "the affirmative destruction of evidence has not been condoned." *Patton,* 538 N.W.2d at 119. The duty to preserve evidence[2] exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. *See id.* at 118–19. Breach of the duty to preserve evidence once such a duty arises may be sanctioned, under a court's inherent authority, as spoliation. *See id.* at 118. Here, we specifically reaffirm our rule that custodial parties have a duty to preserve relevant evidence for use in litigation. *Id.* at 116. We also reaffirm our previously stated rule that, even when a breach of the duty to preserve evidence is not done in bad faith, the district court must attempt to remedy any prejudice that occurs as a result of the destruction of the evidence. *Id.*

<u>Miller v. Lankow</u>, 801 N.W.2d 120, 127–28 (Minn. 2011)

**Once a duty to preserve evidence has arisen, the breach of that duty may subject a party to sanctions under a court's inherent authority as spoliation.** "Courts have long afforded redress for the destruction of evidence * * *." Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc., 456 N.W.2d 434, 436 (Minn.1990).

**Much of the information that is subject to disclosure or responsive to discovery in this case may be stored on your current and former computer systems and other media and devices, including personal digital assistants, voice messaging systems, online repositories, telephone recording systems, hard drives and cell phones**.  The term Electronically Stored Information (hereinafter "ESI") should be afforded the broadest possible meaning and includes (by way of example and not as an exclusive list) potentially relevant information electronically, digitally, magnetically, optically or otherwise stored as:

- Audio and/or video records of any telephone calls and conversations made related to the events described in the Lawsuit
- digital communications (for example email, voicemail, imaging, scanning, and/or instant messaging);
- email service stores and server information (for example SQL Server, Oracle, Dropbox, Box, lotus, domino.nsf, Microsoft exchange.edb, Google Corporate Gmail, etc.);
- word processing documents (for example Microsoft Word or WordPerfect files and all drafts thereof);
- spreadsheets and tables;
- accounting application data;
- imaging and facsimile files;
- recordings of any conversations with my client;
- phone records of any calls to my client;
- databases (for example Access, Oracle, SQL Server data);
- Contact and relationship data management (for example Outlook, Ask or Interaction);
- Calendar and diary application data;
- online access data (for example temporary internet files, history files and cookies);
- presentations (for example PowerPoint and Corel presentations);
- network access and server activity logs relating to information exchanged between you and third parties, and by you with third parties;
- project management application data;
- backup and archival files;
- letters, documents, or correspondence of whatever kind related to existing loss prevention policies, and changes, updates, alterations made to loss prevention policies for the past three (3) years

**My client hereby demands that you preserve both accessible and inaccessible ESI**. This demand is reasonable and necessary.  Pursuant to the Rules of Civil Procedure, in the event of an eventual civil suit you must identify all sources of ESI you decline to produce and demonstrate why such sources are not reasonably accessible.  For good cause shown in that event, the Court may order production of ESI even if it is not reasonably accessible. Accordingly, you must preserve ESI that you deem inaccessible so as not to preempt the Court's authority.

**Preservation requires your immediate intervention.** You must act immediately to preserve potentially relevant ESI, including, without limitation, information and the earlier of a created or last modified date for ESI concerning any activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand.  Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence.  You must immediately intervene to prevent loss due to routine operations or malfeasance and employ proper techniques and protocols to preserve ESI. Booting a drive, examining its contents or running any application may irretrievably alter the evidence contained therein and constitute spoliation of evidence.

**You are also directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with that litigation hold.** You are further directed to immediately identify and modify or suspend features of your information systems and devices, which, in routine operation, operate to cause the loss of potentially relevant ESI.  Examples of such features and operations that could result in spoliation include:

- purging the contents of email repositories by age, capacity or any other criteria
- using data or media wiping, disposal, erasure of encryption utilities or devices
- overriding erasing, destroying or discarding backup media
- reassigning, re-imaging or deposing of systems, servers, devices or media
- running antivirus or other programs affecting wholesale metadata alteration
- releasing or purging online storage repositories
- using metadata stripper utilities
- disabling server, packet or local instant messaging login
- executing drive or file defragmentation or compression programs
- shredding or other destruction of documents, routine or otherwise

**You should anticipate that your officers, employees, or others may seek to hide, destroy or alter ESI.**  This is not a concern that is unique to you or your organization.

Rather it is simply conduct that occurs with such regularity that any custodian of ESI and their counsel must anticipate and guard against its occurrence. You are directed to preserve complete backup tape sets (including differentials and incrementals) containing recordings, emails and ESI for any person involved in the activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand, whether inside or outside of your organization and control. You should also take affirmative steps to prevent anyone with access to your data, systems or archives from seeking to modify destroy or hide ESI.

**As an appropriate and cost-effective means of preservation, you should remove from service and securely sequester the systems, media and devices housing potentially relevant ESI.** In the event that you deem it impractical to sequester those systems, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems identified above is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods imposes a significant threat of spoliation and data loss. Be advised that a conventional copy, backup or ghosting of a hard drive does not produce a forensically sound image because it only captures active, unlocked data files and fails to preserve forensically significant data.

**You should anticipate that certain ESI, including but not limited to recordings, spreadsheets and databases will be sought in the forms or form in which it was ordinarily maintained, that is in native form.** Accordingly, you should preserve ESI in such native forms and should not employ methods to preserve ESI that remove or degrade the ability to search ESI by electronic means or that make it difficult or burdensome to use that information.

**You should further anticipate the need to disclose and produce system and application metadata and act to preserve it.** System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Metadata may be overwritten or corrupted by careless handling or improper preservation, including by moving, copying or examining the contents of files. As hard copies do not preserve electronic search ability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both the forms.

**We desire to work with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol if you will furnish an inventory and description of the systems and media to be preserved.** Alternatively, if you

promptly disclose the preservation protocol you intend to employ, perhaps we can now identify any points of disagreement and resolve them.

**A successful and compliant ESI preservation effort requires expertise.**  If you do not currently have such expertise, we urge you to engage the services of an expert in electronic evidence and computer forensics.  Perhaps our respective experts can work cooperatively to secure a balance between evidence preservation and burden that is fair to both sides and acceptable to the Court.  I am available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay.  Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay of production of evidence to which we are entitled, that failure would constitute spoliation of evidence.

**Please confirm in writing no later than five (5) business days from the date of this Notice, that you have taken the steps outlined in this Notice to preserve ESI and tangible documents potentially relevant to this pending action.**  If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.

If you retain legal counsel with respect to these matters, please direct this Notice to their immediate attention.  Thank you for your anticipated cooperation in this vital matter.

Respectfully submitted,

**THE BARRY LAW OFFICE, LTD**

Dated: June 30, 2021

By:  s/ Peter F. Barry
Peter F. Barry, Esq.
Attorney I.D.#0266577
2828 University Ave. SE, Suite 202
Minneapolis, Minnesota 55414-4127
Telephone:  (612) 379-8800
pbarry@lawpoint.com

*Attorney for Plaintiff*